**In re The GIBSON GROUP, INC., Debtor.**

**CANADIAN PACIFIC FOREST PRODUCTS LIMITED, Plaintiff–Appellant,**

v.

**J.D. IRVING, LIMITED, Blum International Inc., West Indies Pulp & Paper Ltd., Defendants–Appellees.**

**No. 94–3567.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 1, 1995.

Decided Sept. 28, 1995.

Jeffrey Alan Marks (argued and briefed), Taft, Stettinius & Hollister, Cincinnati, OH, for Canadian Pacific Forest Products Limited.

Quintin F. Lindsmith (argued and briefed), Bricker & Eckler, Columbus, OH, for J.D. Irving, Limited.

Michael G. Kohn, Cincinnati, OH, for Blum International Inc.

John D. Luken (briefed), Douglas W. Campbell, Dinsmore & Shohl, Cincinnati, OH, for West Indies Pulp & Paper Ltd.

Before: MARTIN, GUY, and DAUGHTREY, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

This appeal addresses the question of whether Congress intended to confer exclusive authority to file an action to avoid preferential or fraudulent transfers, pursuant to 11 U.S.C. §§ 547 and 548, on a trustee or debtor-in-possession, or whether a creditor might have standing to file such an action. Specifically, we must decide whether Canadian Pacific Forest Products Limited has standing to file an action to avoid allegedly preferential and fraudulent transfers made by the debtor-in-possession, The Gibson Group, Inc. The bankruptcy court dismissed Canadian Pacific's complaint for lack of standing—even though the debtor-in-possession refused to file an action—and Canadian Pacific appeals from the district court's decision affirming the bankruptcy court. Canadian Pacific also appeals the district court's decision affirming the bankruptcy court's denial of its subsequent motion to supplement the record to prove standing.

■■■ We believe that Congress has not precluded the bankruptcy court from granting standing to a creditor if such standing furthers Congress's purpose in creating the avoidance actions found in 11 U.S.C. §§ 547 and 548 in the context of a Chapter 11 reorganization. We decide, therefore, that a bankruptcy court may permit a single creditor in a Chapter 11 case to initiate an action to avoid a preferential or fraudulent transfer instead of the debtor-in-possession if the creditor: 1) has alleged a colorable claim that would benefit the estate, if successful, based on a cost-benefit analysis performed by the bankruptcy court; 2) has made a demand on the debtor-in-possession to file the avoidance action; 3) the demand has been refused; and, 4) the refusal is unjustified in light of the statutory obligations and fiduciary duties of the debtor-in-possession in a Chapter 11 reorganization. We also hold that, while the creditor has the initial burden to allege facts

showing that the refusal to file suit is "unjustified," the debtor-in-possession must rebut the presumption if the creditor carries its initial burden. Contrary to the district court's view, we believe that a creditor need not plead facts alleging the debtor-in-possession's *reason* or *motive* for the inaction, but may meet its burden to allege unjustified inaction through notice pleading by alleging the existence of an unpursued colorable claim that would benefit the estate. *See* Fed. R.Civ.P. 8; Fed.R.Bankr.P. 7008 (making Fed.R.Civ.P. 8 applicable in bankruptcy adversary proceedings). If the debtor-in-possession gives no reason for its inaction when a demand is made, the bankruptcy court may presume that its inaction is an abuse of discretion ("unjustified") if the complaint alleges a colorable claim.

This case arises out of Gibson's voluntary filing for a Chapter 11 reorganization. Gibson is a broker of paper products, often buying on credit from suppliers in order to have inventory to sell to its customers. In early December 1989, two of Gibson's customers, West Indies Pulp & Paper Ltd. and Blum International Inc., owed Gibson in excess of $3 million dollars for paper products they had purchased. Gibson, in turn, owed one of its suppliers, J.D. Irving, Ltd., in excess of $4.5 million. Gibson's debt to J.D. Irving was unsecured and in arrears.

Canadian Pacific, a supplier of paper products to Gibson, held a security interest in Gibson's accounts receivable, including the $3 million that West Indies and Blum International owed to Gibson. Canadian Pacific alleges that Gibson and J.D. Irving agreed to reduce its debt to J.D. Irving through a "scheme" whereby Gibson would use its accounts receivable to pay off a large portion of its debt to J.D. Irving. The "scheme" involved Gibson issuing $3 million of credits to West Indies and Blum International, thus reducing their debt to Gibson by that amount. Canadian Pacific claims these were fraudulent transfers under 11 U.S.C. § 548(a). In return, West Indies and Blum International agreed to sign promissory notes directly to J.D. Irving for $3 million, reducing Gibson's unsecured debt to J.D. Irving by that amount. Canadian Pacific

alleges that this transfer occurred within ninety days before Gibson filed its bankruptcy petition and otherwise qualifies as a preferential transfer under 11 U.S.C. § 547(b). The result of this series of transactions was to reduce Gibson's accounts receivable, and therefore Canadian Pacific's collateral, by $3 million.

After filing for bankruptcy relief on January 19, 1990, Gibson became a debtor-in-possession without the appointment of a trustee. On January 8, 1992, Canadian Pacific filed a motion with the bankruptcy court requesting authorization to prosecute, on behalf of Gibson's estate, an adversary proceeding to avoid and recover the allegedly preferential and fraudulent transfers described above. On January 17, 1992, the bankruptcy court granted Canadian Pacific's motion, but reserved for later decision the issue of whether Canadian Pacific had standing to bring an avoidance action. Canadian Pacific promptly filed its complaint.

J.D. Irving and West Indies then moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) for lack of standing. *See* Fed. R.Bankr.P. 7012 (applying Fed.R.Civ.P. 12 in a bankruptcy proceeding). In addition, Blum International filed a motion to dismiss on other grounds. On July 21, the bankruptcy court granted the motions to dismiss for lack of standing. The bankruptcy court believed that a single creditor could be authorized to file an avoidance action in place of the trustee or a debtor-in-possession if certain prerequisites were met: (1) if the creditor made a demand for action on the debtor-in-possession and the creditors' committee; (2) if both refused to file the suit; and (3) if their refusal to pursue the action was "unjustified." The bankruptcy court then erroneously decided that Canadian Pacific had to allege facts describing the *reason* why the debtor-in-possession or the creditors' committee failed to act. The court stated:

All that plaintiff has shown is that indeed request was made both of plaintiff and creditors' committee, and it is alleged that both refused to file suit. Absolutely no showing is made as to the *reason* that these parties refused to initiate the litigation.

143 B.R. 111, 113 (Bankr.S.D.Ohio 1992) (emphasis added). Canadian Pacific counters that it does not have to allege the specific reason for the inaction; Canadian Pacific argues that the existence of an unpursued colorable claim that would benefit the estate is sufficient to meet its burden to show that the inaction was unjustified. We agree. Relying on various opinions by bankruptcy judges, however, the bankruptcy court concluded that Canadian Pacific had failed to meet its burden to prove that the inaction was "unjustified" because it did not show more than a mere refusal by the debtor-in-possession to take action. Concluding erroneously that Canadian Pacific had failed to meet its pleading burden, the bankruptcy court found it unnecessary to determine whether Canadian Pacific had stated a colorable claim or whether pursuing the claim would benefit the estate.

Canadian Pacific subsequently filed a motion to alter or amend the judgment, claiming that the bankruptcy court should let it conduct discovery so that it might allege with specificity the reason why the debtor-in-possession or the creditors' committee had not filed suit. On November 30, the bankruptcy court denied the motion.

On August 24, 1993, the district court affirmed both orders. The district court agreed that a single creditor could have standing to bring an avoidance action in place of the debtor-in-possession, but believed that bankruptcy court case law showed that a creditor had to meet certain requirements before bringing an avoidance suit. In particular, the district court held that a creditor had to allege "unjustified inaction with specificity," just as a plaintiff would have to in a fraud case under Fed.R.Civ.P. 9(b). Fed.R.Bankr.P. 7009 (applying Fed.R.Civ.P. 9 in a bankruptcy adversary proceeding). The district court reasoned that this heightened pleading requirement "aids the Court in winnowing out frivolous claims." The district court also approved of the bankruptcy court's denial of Canadian Pacific's motion to amend its complaint, reasoning that information to prove that the inaction was unjustified must not exist if after almost three years of bankruptcy proceedings Canadian Pacific could not allege the reason for inaction with speci-

ficity. The district court also did not discuss whether the claim Canadian Pacific wanted to pursue was a colorable claim that would benefit the estate, presumably because the bankruptcy court did not first address the issue.

We begin our analysis by noting once again, as we stated in *In re Granger Garage, Inc.*, 921 F.2d 74 (6th Cir.1990), that bankruptcy courts are courts of limited jurisdiction. *Id.* at 77 (*see generally, White Motor Corp. v. Citibank, N.A.*, 704 F.2d 254, 263 (6th Cir.1983)) (discussing *Northern Pipeline v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)); 28 U.S.C. § 1334 (1988) (conferring original, but not exclusive, jurisdiction to district courts over matters arising under the Bankruptcy Code). As to the standard of review applicable to bankruptcy decisions, we stated in *In re Laguna Assoc. Ltd Partnership*, 30 F.3d 734, 737 (6th Cir.1994), that we review the judgment of the bankruptcy court directly, and follow its findings of fact unless clearly erroneous. As to its conclusions of law, however, our review is *de novo*. In this case, our review focuses on the legal standard the bankruptcy court and, to a lesser extent, the district court, applied to determine that Canadian Pacific lacked standing to file the avoidance action, and the standard the lower courts applied to determine whether Canadian Pacific had adequately stated a claim so as to defeat a 12(b)(6) motion. *See Nishiyama v. Dickson County*, 814 F.2d 277, 279 (6th Cir.1987) (en banc) (stating that a complaint will be dismissed on a Civil Rule 12(b)(6) motion only if plaintiff can prove no set of facts to support its claim for relief).

In determining that neither 11 U.S.C. § 547 nor § 548 preclude the judicially-created doctrine of derivative standing, we conclude that the express statutory language does not prohibit creditor standing, and that such standing furthers Congress's purpose in balancing the interests between the debtor and its creditors in a Chapter 11 reorganization. Section 547(b) provides that "the trustee may avoid any [preferential] transfer ....," and Section 548(a) provides that "[t]he trustee may avoid any [fraudulent] trans-

fer. . . ." A debtor-in-possession has all the powers of a trustee. 11 U.S.C. § 1107(a). Thus, although the starting point for our inquiry is the language used by Congress, *In re First Truck Lines, Inc.*, 48 F.3d 210, 213 (6th Cir.1995) (*citing Estate of Floyd Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 474–76, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992)), we are faced with a situation where we must determine whether Congress intended to confer exclusive authority on the trustee or debtor-in-possession to bring avoidance actions in a Chapter 11 case if the debtor abuses its discretion in not bringing such an avoidance action. A debtor-in-possession often acts under the influence of conflicts of interest and may be tempted to use its discretion under Sections 547 and 548 as a sword to favor certain creditors over others, rather than as a tool to further its reorganization for the benefit of all creditors as Congress intended. Given this reality, we do not believe Congress intended to exclude creditors from seeking to avoid preferential or fraudulent transfers where the debtor-in-possession abuses its discretion.

On appeal, Canadian Pacific agrees that Congress has authorized a trustee or a debtor-in-possession to file an avoidance action, but argues that a creditor is not precluded from initiating an avoidance action under certain circumstances. Canadian Pacific contends that appellate case law supports its view that there are no *absolute prerequisites* to standing, but only "factors" or "considerations" that a bankruptcy court must weigh when deciding whether a creditor has standing to file an avoidance claim, and in any event, it has fulfilled these factors or prerequisites.

Canadian Pacific argues that appellate case law shows that a bankruptcy court must weigh certain "factors" or "considerations" in determining creditor standing. These considerations include: 1) that the creditor obtain permission of the bankruptcy court to file suit; 2) that the creditor make a demand for action and the demand is declined; 3) that the failure to act is "unjustified"; and, 4) that there is a lack of opposition to the creditor's petition. Canadian Pacific argues further that, contrary to the bankruptcy court's approach, most of the Circuits have taken a "facts and circumstances" approach to standing and have not denied standing if one or more of the factors or considerations is not present. Canadian Pacific asserts that appellate courts have generally held that a debtor-in-possession's failure to bring a colorable avoidance action that is likely to benefit the estate has been held to be sufficient to meet the "unjustified inaction" factor or requirement. *See, e.g., Louisiana World Exposition, Inc. v. Federal Ins. Co. (In re Louisiana World Exposition, Inc.)*, 832 F.2d 1391 (5th Cir.1987); *Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d 233 (5th Cir. 1988). Canadian Pacific points out that our Circuit has held that even a *justified* failure to bring a colorable claim is not a bar to creditor standing. *See In re Automated Business Sys., Inc.*, 642 F.2d 200 (6th Cir. 1981) (holding that a creditor had standing to file an avoidance action where trustee refused to bring suit due to lack of funds). Canadian Pacific argues here that, whatever internal reason Gibson and the creditors' committee may have had for failing to act, it need show only a colorable claim likely to benefit the estate plus a failure to bring this claim in order to have sufficiently alleged "unjustified inaction." Thus, Canadian Pacific asserts, and we agree, that it does not have to plead facts showing the debtor-in-possession's *motive* or *reason* for not filing the avoidance action in order to properly allege unjustified inaction. Such a heightened pleading standard is not required in order for a creditor to make its prima facie showing for standing.

Citing only bankruptcy court cases and misreading contrary Court of Appeals holdings, West Indies and J.D. Irving argue that it is far from clear that a single creditor can have standing to bring an avoidance action in place of the debtor-in-possession. They argue that only the creditors' committee can have standing, and even then only in "extraordinary circumstances." They also contend that where there is an active, capable creditors' committee, a single creditor cannot have standing to sue.

West Indies and J.D. Irving also claim that even if a single creditor could sue, the credi-

tor must meet certain "absolute threshold requirements" before obtaining standing. West Indies concludes that these prerequisites are: 1) written demand and refusal; 2) the suit would benefit the estate; 3) a *prima facie* demonstration of a colorable claim; 4) the grounds for the inaction are "unjustified" or an "abuse of discretion." West Indies argues that these "requirements" safeguard bankruptcy proceedings and debtors from an onslaught of litigation motivated by isolated creditors following their own self-interests to the detriment of the debtor and its efforts to organize. West Indies concludes that the failure of Canadian Pacific to allege and establish an unjustifiable *reason* why Gibson and the creditors' committee failed to bring action was fatal. West Indies does not explain what types of reasons would make the inaction "unjustified," but agrees with the bankruptcy court and district court that Canadian Pacific must allege more than the existence of an unpursued colorable claim. J.D Irving argues along similar lines, insisting that Canadian Pacific has not shown that the debtor's mere refusal to act meets the unjustified inaction requirement. At oral argument, neither West Indies nor J.D. Irving could provide this Court with a reason for the creditors' committee's refusal to bring the avoidance action, and could not explain to us Gibson's reason for refusing to act.

Because we have not visited the question of creditor standing presented here since our decision in *In re Automated Business Sys., Inc.,* a pre-Bankruptcy Reform Act of 1978 case, we now turn to discuss whether a single creditor may initiate an avoidance action under 11 U.S.C. §§ 547 or 548, and if so, under what conditions such a creditor might stand in the shoes of the debtor-in-possession. We conclude that derivative standing would further Congress's intent that a debtor's assets be marshalled and preserved when to do so would further the goal of reorganization.

▆▆▆ The purpose of 11 U.S.C. §§ 1101–1174 ("Chapter 11") is to provide a debtor with legal protection in order to give it the opportunity to reorganize, and thereby to provide creditors with going-concern value rather than the possibility of a more meager satisfaction through liquidation. Therefore, the maximization of the value of the estate is not necessarily the primary goal of a Chapter 11 reorganization as it would be in a Chapter 7 liquidation. 11 U.S.C. §§ 701–766. However, this does not mean that the debtor-in-possession has no duty to conserve and protect the assets, including accounts receivable, of the estate. *See In re March,* 995 F.2d 32 (4th Cir.1993) (holding that a Chapter 11 debtor-in-possession acts as trustee for all of his creditors); *Bennett v. Williams,* 892 F.2d 822, 823 (9th Cir.1989) (trustee must preserve assets of the estate). Given the duties of a Chapter 11 trustee or debtor-in-possession, a failure to bring an action to avoid a preferential or fraudulent transfer can be an abuse of discretion.

We have determined that a creditor may have standing to file an avoidance action if the bankruptcy court determines that certain conditions exist and certain prerequisites are met. Given the discretionary nature of the exercise of the avoidance power, perhaps the most important prerequisite to derivative standing is that the debtor-in-possession has abused its discretion in failing to avoid a preferential or fraudulent transfer. In addition, although we believe there should be prerequisites to creditor standing, we favor the more flexible approach taken by other Circuits.

▆▆▆ As to the requirement most in dispute here, whether the inaction was "unjustified," we hold that if a creditor pleads facts to support the conclusion that it has a colorable claim to avoid a preferential or fraudulent transfer, and if the bankruptcy court finds that the claim will likely benefit the estate based on a cost-benefit analysis, then the creditor has raised a rebuttable presumption that the debtor-in-possession's failure to bring that claim is unjustified. The debtor-in-possession must then refute this presumption by giving a reason justifying its inaction. A bankruptcy court must then decide whether the inaction is indeed an abuse of discretion. Of course, the creditor may allege a reason why the debtor-in-possession failed to file an avoidance action, such as the existence of a conflict of interest, in addition to pleading facts showing an unpursued colorable claim likely to benefit the estate. Fi-

nally, we hold, as we did in *In re Automated Business Sys., Inc.,* that a bankruptcy court does not err if it finds that a facially justifiable reason for failing to file an avoidance action, such as where a trustee claims that a lack of funds is its only reason for failing to bring the action, is actually insufficient to justify the failure to bring the action if under the circumstances the claim will benefit the estate even after attorneys' fees and costs are deducted.

Our decision in *In re Automated Business Sys., Inc.* is instructive on this issue of whether a creditor can institute a claim because under both the Bankruptcy Act and the Bankruptcy Code, Congress authorized the trustee to bring an avoidance action to recover a fraudulent transfer. S.Rep. No. 989, 95th Cong., 2d Sess. 89–90 (1978), *reprinted in,* 1978 U.S.C.C.A.N. 5875–76 (stating that 11 U.S.C. § 548 is "derived in large part" from Bankruptcy Act § 67d); H.R.Rep. No. 595, 95th Cong., 2d Sess. 375, *reprinted in,* 1978 U.S.C.C.A.N. 6331 (same). In *In re Automated Business Sys.,* we upheld the bankruptcy court's decision denying a motion to dismiss a creditor's complaint to set aside an allegedly fraudulent transfer for lack of standing. In that case, the debtor paid $45,000 to International Business Machines to reduce its debt to IBM. The debtor made this payment over a year prior to filing for bankruptcy protection. The bankruptcy court found evidence that the debtor made the payment with fraudulent intent. The issue there was whether an innocent transferee, IBM, must return such a payment to the bankrupt's estate. The bankruptcy court held that IBM did not have to return the payment. Subsequently, a creditor of Automated Business Systems filed an avoidance action to recover the money. The creditor first made a formal request asking the trustee to bring the suit, but the trustee refused due to lack of funds in the estate.

This Court affirmed the bankruptcy court's decision overruling IBM's motion to dismiss for lack of standing. We agreed with the bankruptcy court's reasoning that a creditor "has a right to proceed on behalf of the estate," with permission of the court, where the trustee "defaults in the performance of any duty, such as seeking to set aside a fraudulent transfer." *In re Automated Business Sys.,* 642 F.2d at 201. Thus, in that case, the lack of funds to pursue the suit was a sufficient reason for permitting the creditor to proceed in the trustee's stead. We established in that case that a creditor could initiate an avoidance action with the permission of the court, after making a demand upon the trustee and if the trustee defaulted in his duty.

Other Circuits have recognized derivative standing where the trustee or the debtor-in-possession abdicates its duty to conserve the estate by filing avoidance actions that would benefit the estate, although appellate courts differ somewhat as to the circumstances under which a creditor may initiate an avoidance action. The Seventh Circuit in *In the Matter of Xonics Photochemical, Inc.,* 841 F.2d 198 (7th Cir.1988), a Bankruptcy Code case, agreed in dicta with this Court's reasoning in *In re Automated Business Sys., Inc.* regarding when a creditor can bring suit. The Seventh Circuit there instructed the creditor-appellant Mitsui & Co., Inc. that if it believed that the debtor-in-possession (Xonics) was not acting in good faith in bringing an action to set aside payments of $124,000 Xonics made to Mitsui, then it could have done one of two things: 1) Mitsui could have sought the appointment of a trustee pursuant to 11 U.S.C. § 1104, or 2) it could have asked the bankruptcy court to allow it to bring a form of derivative suit in the name of the debtor. *Id.* at 202 (citing *In re Automated Business Systems,* 642 F.2d 200 (6th Cir.1981)). The Seventh Circuit further observed, based on *Automated Business Systems,* that "before [Mitsui] could [bring such a derivative suit] it would have to convince the court that the debtor was shirking his statutory responsibilities and this Mitsui has never done." *Id.* (citation omitted). Thus, the Seventh Circuit recognized that a sufficient reason for permitting a creditor to file a suit instead of the debtor-in-possession would be the default of the debtor in meeting its statutory duties.

The Third Circuit in *In re McKeesport Steel Castings Co.,* had to decide whether a creditor could initiate an adversary proceed-

ing under 11 U.S.C. § 506. 799 F.2d 91, 94 (3d Cir.1986). In that case, a gas company supplied natural gas to the debtor postpetition by court order so that the debtor could continue operations. The gas company filed suit under Section 506(c) to obtain payment for the gas it had supplied to the debtor. Section 506(c) gives the *trustee* (or debtor-in-possession) the power to recover this expense. The bankruptcy court granted payment. One of the debtor's secured creditors appealed and the district court reversed, holding, *inter alia,* that the gas company did not have standing to bring the Section 506(c) claim because it was not the trustee or debtor-in-possession. The Third Circuit reversed the district court, and affirmed the bankruptcy court's decision. The Third Circuit reasoned:

> The rule that individual creditors cannot act in lieu of the trustee is often breached when sufficient reason exists to permit the breach. In this case, neither the debtor in possession nor a creditors' committee had reason to make a claim on behalf of [the gas company], when the debtor thereby would be required to pay for utilities it had received without charge following the date that its petition was filed. Thus, because the [gas company] had a colorable claim for expenses and was the only creditor that would zealously pursue that claim, it has standing to bring a § 506(c) action.

*Id.* at 94 (citation omitted). Thus, the Third Circuit permitted the creditor to go forward where it had: (1) a colorable claim; and (2) no other statutory party had a reason to zealously pursue the claim. The Third Circuit permitted an individual creditor to bring a claim statutorily assigned to the trustee or debtor-in-possession if "a sufficient reason exists" to do so. The Court did not discuss whether the gas company should have obtained permission of the bankruptcy court prior to filing its Section 506(c) claim, or whether it should have made a demand upon the debtor to act. It is arguable, therefore, that the Third Circuit might again permit creditor standing if the creditor has a colorable claim and no other statutory party has a reason to zealously pursue the action.

The Fifth Circuit in *In re Louisiana World Exposition, Inc.,* 832 F.2d 1391 (5th Cir.1987) reached the merits of an action instituted by a creditors' committee against the debtor-in-possession, Louisiana World Exposition, Inc., despite the fact that the committee had not sought permission of the bankruptcy court to file its complaint. Citing several cases holding that a creditors' committee had an implied right to institute an action on behalf of the debtor-in-possession or the trustee, the Court then accepted an appellees' concession that the creditors' committee can sue in some circumstances. *Id.* at 1397. The issue was under what circumstances the creditors' committee could sue. The Fifth Circuit refused to impose a "formalistic checklist" of requirements, but agreed that the requirements bankruptcy courts had applied to a determination of standing were "relevant considerations." *Id.* In that case, the creditors' committee had to satisfy some of these "relevant considerations" to have standing, i.e.,: 1) have a colorable claim; 2) the debtor-in-possession refused unjustifiably to pursue the claim; 3) the committee first receive leave to sue from the bankruptcy court.

Another "consideration" that the Fifth Circuit discussed was the bankruptcy courts' requirement that the creditor(s) have made a demand on the debtor or trustee for action and the demand was refused. The Fifth Circuit did not strictly apply this "consideration," however, in *LWE I.* "As we review the record it seems plain that LWE would not have sought the relief the Committee seeks, even if the Committee had filed a formal request." The Committee had requested the debtor (LWE) to take another action, and this was refused. The Court felt that the same conflict of interest preventing LWE from bringing suit against its directors would prevent it from filing the action desired by the Committee (to prevent insurance proceeds to cover legal costs from being exhausted through payments to the directors of LWE).

> Given LWE's refusal to file that suit, there is no reason to believe that LWE would have begun, or would begin, the present action if requested. No one contends otherwise. LWE has always been free to

seek the relief that the Committee pursues here, but apparently has never done so. No acute perception is required to surmise the conflicts that might prevent LWE from suing its directors an officers or prevent it from seeking to staunch the source paying their legal fees.

*Id.* at 1398. The Court also found it dispositive that LWE had not opposed the Committee's complaint on standing grounds.

One year later, the Fifth Circuit decided a case arising outside of the same facts, *Louisiana World Exposition v. Fed. Ins. Co.,* 858 F.2d 233 (5th Cir.1988) ("LWE II"). In that case, the creditors' committee desired to bring suit because the debtor had an insider conflict that prevented it from bringing the suit. The Fifth Circuit reasoned that the committee had standing if: (1) its claim was colorable; (2) the debtor-in-possession unjustifiably refused to pursue the claim; and, (3) the committee received leave from the bankruptcy court to file. The Fifth Circuit reiterated its view that these "factors" are "relevant considerations, though not necessarily a formalistic checklist." *Id.* at 247.

The Court then addressed whether the refusal was "unjustified." The Fifth Circuit examined extensively the duty of the debtor-in-possession to maximize the value of the estate, concluding that

> [w]here the debtor-in-possession is unable or unwilling to fulfill its obligation—due, for instance, to a conflict of interest—the Committee may assert the cause of action on behalf and in the name of LWE if authorized to do so by the bankruptcy court. In light of our analysis, we find that the debtor-in-possession's refusal to pursue LWE's cause of action against its officers and directors for negligent management was indeed unjustified.

*Id.* at 252–53 (citations omitted). In footnote 20, the Court gave its rationale for its conclusion, stating that

> [i]t is clear from reviewing our decisions in *Coral Petroleum* [v. Banque Paribas–London, 797 F.2d 1351 (5th Cir.1986)] and *Fuel Oil Supply* [v. Gulf Oil Corp., 762

F.2d 1283 (5th Cir.1985)] that in determining whether a debtor-in-possession's refusal was unjustified, we must look to whether the interests of creditors were left unprotected as a result. (Citations omitted). *As the interests of creditors are imperiled where valid and profitable state law causes of action are neglected by the debtor-in-possession, the unjustified refusal calculus will generally amount to little more than a cost-benefit analysis.*

*Id.* at 253 (emphasis added). The Court went on to reverse the district court's decision to grant the motion to dismiss for lack of standing.

Finally, the Second Circuit in *In re STN Enter.,* 779 F.2d 901 (2d Cir.1985), held that an unsecured creditors' committee that had applied to the bankruptcy court for permission to file suit against one of the corporate directors of the debtor had standing to sue. The bankruptcy court and the district court had denied permission to file suit. The district court did so reasoning that a trustee or debtor-in-possession is statutorily charged with responsibility to bring suit to conserve assets and that a creditors' committee may do so only where there has been a breach of a statutory duty. The district court believed that there had been no breach of a statutory duty because the corporate director owed no fiduciary duty to herself as stockholder and no duty to the creditors of the corporation except "under certain circumstances." The district court also did not allow the suit because it felt to do so would dramatically expand a creditors' committee's implied right to sue.

The Second Circuit reversed because the district court had not properly considered whether the corporate director had breached her duties under state law. The Court first observed that most bankruptcy courts addressing this standing issue had found an implied, but qualified, right for a creditors' committee to sue in the name of the debtor-in-possession pursuant to 11 U.S.C. §§ 1103(c)(5) and 1109(b).[1] The Court further noted that courts allowing a creditors'

---

**1.** By way of distinction, we do not base our decision regarding a creditor's standing to file an avoidance action on 11 U.S.C. § 1109(b), which gives a party in interest, including a creditors' committee or a single creditor, the right to be heard on any issue in a Chapter 11 case. *See In*

committee to sue have done so only when the trustee or debtor-in-possession unjustifiably failed to bring suit or abused its discretion in not suing to avoid a preferential transfer. The Court reasoned that

> [i]f the committee presents a colorable claim or claims for relief that on appropriate proof would support a recovery, the district (or bankruptcy) court's threshold inquiry will still not be at an end. In order to decide whether the debtor unjustifiably failed to bring suit so as to give the creditors committee standing to bring an action, the court must also examine, on affidavit and other submission, by evidentiary hearing or otherwise, whether an action asserting such claim(s) is likely to benefit the reorganization estate ... The court's inquiries will involve in the first instance not only a determination of probabilities of legal success and financial recovery in event of success, but also a determination as to whether it would be preferable to appoint a trustee in lieu of the creditors committee to bring suit....

779 F.2d at 905. Thus, the Second Circuit decided that if the committee's claim was colorable and if the corporate director had breached a state law duty, which presumably led to the director's refusal to bring suit, then the committee would have standing. The Court remanded to the district court to consider whether the corporate director had breached its duties and thus unjustifiably failed to bring suit to avoid the preferential transfer.

In conclusion, we hold that a creditor or creditors' committee may have derivative standing to initiate an avoidance action where: 1) a demand has been made upon the statutorily authorized party to take action; 2) the demand is declined; 3) a colorable claim that would benefit the estate if successful exists, based on a cost-benefit analysis performed by the court, and 4) the inaction is an abuse of discretion ("unjustified") in light of the debtor-in-possession's duties in a Chapter 11 case. A creditor has met its burden to show standing to file an avoidance action if it has fulfilled the first three requirements and the trustee or debtor-in-possession declined to take action without stating a reason. The burden then shifts to the debtor-in-possession to establish, by a preponderance of the evidence, that its reason for not acting is justified.

Here, Canadian Pacific made a written demand on Gibson and the Committee to bring an action to avoid Gibson's pre-petition transfers. After Gibson and the Committee refused to act, Canadian Pacific sought permission from the bankruptcy court to file an avoidance action. On the face of the complaint, Canadian Pacific has stated a colorable claim under 11 U.S.C. §§ 547 and 548 that would benefit the estate if successful. Canadian Pacific has alleged unjustified inaction on the part of the defendants and, in light of their refusal to give a reason for failing to act, the decision to grant the motion under Civil Rule 12(b)(6) was erroneous. REVERSED.

re Shelby Motel Group, Inc., 123 B.R. 98, 103 (N.D.Ala.1990) (stating that an individual creditor may have an implied right under Section 1109 to initiate an avoidance action). Section 1109(b) provides:

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, *a creditor,* an equity holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

(Emphasis added). A creditor's implied right to initiate an adversary proceeding might be derived from the language that a party in interest "may raise and may appear and be heard on any issue in a [Chapter 11] case." The legislative history may support this view. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 116 (1978), *reprinted in,* 1978 U.S.C.C.A.N. 5902 (giving Section 1109 the title, "Right to be Heard"; stating "in unqualified terms, that any creditor ... shall have the right to be heard as a party in interest under this chapter...."); H.R.Rep. No. 595, 95th Cong., 2d Sess. 404, *reprinted in,* 1978 U.S.C.C.A.N. 6360 (giving Section 1109 the title, "Intervention;" stating that the [authorized parties] "may raise an issue or may appear and be heard on an issue that is raised by someone else."). We mention this distinction only to point out that, while Section 1109(b) may be a statutory basis for creditor standing to file an avoidance action, we do not believe it forecloses the possibility of judicially-created derivative creditor standing where a trustee or debtor-in-possession abuses its discretion by failing to file an avoidance action.