**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**
**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No.   NV-17-1210-FLTi |
| | ) | |
| CONSOLIDATED NEVADA CORPORATION, | ) | Bk. No.   3:13-bk-51236-GWZ |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| In re: | ) | BAP No.   NV-17-1211-FLTi |
| | ) | |
| PAUL A. MORABITO, | ) | Bk. No.   3:13-bk-51237-GWZ |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| PAUL A. MORABITO; CONSOLIDATED NEVADA CORPORATION, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM**[*] |
| | ) | |
| JH INC.; JERRY HERBST; BERRY-HINCKLEY INDUSTRIES; WILLIAM A. LEONARD, JR., Chapter 7 Trustee, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Argued and Submitted on December 1, 2017
at Reno, Nevada

Filed – December 21, 2017

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Gregg W. Zive, Bankruptcy Judge, Presiding

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, see Fed. R. App. P. 32.1, it has no precedential value, see 9th Cir. BAP Rule 8024-1.

Appearances:   David B. Shemano of Robins Kaplan LLP argued for appellants Consolidated Nevada Corporation and Paul A. Morabito; Gerald M. Gordon of Garman Turner Gordon LLP argued for appellees JH, Inc., Jerry Herbst, and Berry-Hinckley Industries; John Francis Murtha of Woodburn & Wedge argued for appellee William A. Leonard, Jr., Chapter 7 Trustee.

Before: FARIS, LAFFERTY, and TIGHE,[**] Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtors Paul A. Morabito and Consolidated Nevada Corporation ("CNC") (collectively, "Morabito Parties") have long been embroiled in a contentious dispute with creditors JH, Inc., Jerry Herbst, and Berry-Hinckley Industries (collectively, "Herbst Parties"). In this latest iteration of their battle, the Morabito Parties - forced into involuntary bankruptcy because of their failure to pay a substantial stipulated judgment against them in the Herbst Parties' favor - sued the Herbst Parties for alleged fraud on the state court. The bankruptcy court denied their request to prosecute the fraud claims on behalf of their respective estates or, in the alternative, to compel chapter 7 trustee William A. Leonard, Jr. ("Trustee") to abandon those claims. On appeal, the Morabito Parties argue that, because the Trustee refused to administer the claims, they should be able to

---

[**] The Honorable Maureen A. Tighe, U.S. Bankruptcy Judge for the Central District of California, sitting by designation.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

prosecute the claims.  We discern no error and AFFIRM.

## FACTUAL BACKGROUND[2]

**A.    Prepetition events**

In 2007, JH, Inc. agreed to purchase the stock of Berry-Hinckley Industries from P.A. Morabito & Co. Ltd. (the predecessor in interest to CNC).  Mr. Herbst guaranteed JH, Inc.'s obligations, and Mr. Morabito was the guarantor for P.A. Morabito & Co.  To induce the Herbst Parties to purchase certain development sites as a part of the purchase agreement, Mr. Morabito agreed to serve as the construction manager.  He also represented that Berry-Hinckley Industries had $3.1 million of working capital.

Thereafter, a dispute arose between the parties, and the Morabito Parties filed suit against the Herbst Parties in Nevada state court.  The Herbst Parties filed numerous counterclaims against the Morabito Parties, arguing that Mr. Morabito defrauded them by promising to provide construction management services that he never actually intended to render and that Mr. Morabito's representation about Berry-Hinckley Industries' working capital was fraudulently inflated.

The state court appointed an independent accountant to examine the working capital issue.  In order to show that the Morabito Parties' working capital estimate was inflated, the Herbst Parties prepared their own estimate; the Morabito Parties

---

[2] We borrow heavily not only from the bankruptcy court's findings of facts and conclusions of law but also from our previous decision, Morabito v. JH, Inc. (In re Morabito), BAP No. NV-14-1593-FBD, 2016 WL 3267406 (9th Cir. BAP June 6, 2016).

disputed that estimate. The independent accountant reported that no evidence supported the Morabito Parties' working capital estimate, and the state court approved and adopted the independent accountant's working capital report.

The state court conducted a bench trial in May 2010. It found that the Morabito Parties breached the stock sale agreement and engaged in fraud in the inducement and misrepresentation. It found that Mr. Morabito never intended to render the construction management services that he had promised; that he made those false representations to induce the Herbst Parties to purchase certain development sites; that the Herbst Parties relied upon those representations; and that the Herbst Parties were damaged in the amount of $19,869,159. The state court further concluded that the working capital estimate prepared by Mr. Morabito contained false representations (including the amount of accounts payable); that the Herbst Parties would not have purchased Berry-Hinckley Industries if they knew that the representations were false; and that the Herbst Parties were damaged in the amount of $66,002,205.75. In total, the state court awarded the Herbst Parties over $149 million in compensatory and punitive damages.

The Morabito Parties appealed to the Nevada Supreme Court, and the Herbst Parties cross-appealed. While the case was on appeal, the parties executed a settlement agreement wherein the parties agreed to dismiss the state court action with prejudice and the Morabito Parties agreed to pay the Herbst Parties more than $13 million over time. To support their obligation to pay the settlement amount, the Morabito Parties agreed to execute a Confession of Judgment in the amount of $85 million and

4

Stipulation to Confession of Judgment.  Mr. Morabito admitted that he had acted in bad faith and committed fraud, including fraudulently inducing JH, Inc. to purchase Berry-Hinckley Industries.  The Morabito Parties agreed that if they failed to pay the settlement amount or otherwise breached the settlement agreement, the Herbst Parties could file the Confession of Judgment in state court.

The Morabito Parties defaulted under the settlement agreement by failing to make timely payments.  They also defaulted on a subsequent forbearance agreement.  The Herbst Parties filed the Confession of Judgment in the state court.

**B.    Involuntary chapter 7 proceedings**

The Herbst Parties filed involuntary chapter 7 petitions against Mr. Morabito and CNC.  Relying on the Confession of Judgment and the Stipulation to Confession of Judgment, the Herbst Parties asserted that they held claims totaling $77 million.

After extensive litigation, the bankruptcy court granted summary judgment and entered orders for relief.  Mr. Morabito appealed the order for relief in his case.  We affirmed.

**C.    Complaint against the Herbst Parties**

The Morabito Parties filed a complaint ("Complaint") in the state court against the Herbst Parties for fraud on the court, fraud, fraudulent inducement, and fraudulent misrepresentation (the "Fraud Claims").  They sought a declaration that the Confession of Judgment was unenforceable because it was procured by fraud.  They alleged that the Herbst Parties fraudulently omitted several million dollars of receivables owed to Berry-

5

Hinckley Industries from the financial statements and working capital calculations that they submitted to the independent accountant. They claimed that they did not become aware of the omissions until late 2016.

The Herbst Parties removed the case to the bankruptcy court. The bankruptcy court denied the Morabito Parties' motion to remand the case to the state court.

**D. The motion for authority to prosecute claims or to compel abandonment**

The Morabito Parties filed a Motion for Authority to File and Prosecute Claims on Behalf of Bankruptcy Estate or, in the Alternative, to Compel Abandonment of Claims ("Motion") in their respective bankruptcy cases. They requested that the bankruptcy court authorize them to prosecute the Complaint or force the Trustee to abandon the Fraud Claims, which they concede are property of the estates.

Following a hearing on the Motion, the bankruptcy court entered detailed findings of fact and conclusions of law and denied the Motion. It found Mr. Morabito's story not credible and was unconvinced that the Morabito Parties only recently discovered the alleged discrepancy, given their counsel's "pattern of meticulous attention regarding all issues" in the underlying litigation.

Regarding the Morabito Parties' request for derivative standing to prosecute the Fraud Claims, the bankruptcy court held that the Morabito Parties did not present a colorable claim and that prosecution of the claims would not benefit their estates. It cited the Sixth Circuit's four-part test articulated in

6

<u>Canadian Pacific Forest Products, Ltd. v. J.D. Irving, Ltd.</u> <u>(In re Gibson Group, Inc.)</u>, 66 F.3d 1436, 1438-46 (6th Cir. 1995), whereby derivative standing is appropriate where: (1) a demand is made upon trustee or debtor-in-possession to act; (2) the demand is declined; (3) the claim is colorable and would benefit the estate based on a cost-benefit analysis; and (4) inaction is an abuse of discretion.

First, it held that the Morabito Parties did not make a demand on the Trustee to prosecute the Fraud Claims. Second, it held that the Trustee did not refuse any demand. Nevertheless, because the Trustee acknowledged that he could not prosecute the Fraud Claims, the first and second factors were irrelevant.

Third, the court held that the Fraud Claims were not colorable and would not survive a Civil Rule 12(b)(6) motion to dismiss (made applicable in bankruptcy through Rule 7012(b)). It found that it is "implausible that Morabito could not have discovered the 'newly discovered evidence' through reasonable diligence." The court also stated that there were several bases for the state court decision, including Mr. Morabito's failure to comply with the contract management agreement and his misrepresentations in that agreement; Mr. Morabito's attempt to control or distort the documents and Berry-Hinckley Industries' accountant's financial analysis; and Mr. Morabito's misrepresentations on a number of other subjects. It further stated that the Morabito Parties' premise that the working capital report was at the heart of the state court decision was "supposition and speculation." The court concluded that it is "plausible that a court would find that the assertions of fraud

7

in the Complaint have nothing to do with the nearly $20 million awarded as damages for Morabito's fraud with respect to the CMA." It held that prosecution of the claims would be expensive and time-consuming (and Mr. Morabito told the court that he does not have any financial resources), such that it would not benefit the estates. Additionally, the court found that Mr. Morabito's declaration contained hearsay and legal argument; it also found the declaration not credible.

Regarding the request for abandonment, the bankruptcy court held that the Morabito Parties did not satisfy the requirements of § 554. It stated that the statute provides that the bankruptcy court "may" order abandonment, which implies the exercise of discretion. The court noted that "the Debtors failed to disclose the Claims to the Trustee, and the Court held that the Claims were implausible, not colorable, and could not survive a Rule 12 motion. Thus, there is no possibility of a benefit to the estate from abandonment. The evidence does not present a situation where the Court should apply the exception to the rule." Finally, the court held that the estates' retention of the Fraud Claims is not burdensome and confers a value and benefit on the estates by "aiding in the efficient and timely administration of the cases. . . . As such, the Trustee should be permitted to retain the Claims for timely dismissal to prevent a further delay in the Trustee's administration of the cases."

The bankruptcy court entered its order denying the Motion, and the Morabito Parties timely appealed.

**E.    The motion to dismiss**

The Herbst Parties and the Trustee (collectively,

8

"Appellees") filed a motion to dismiss these appeals, arguing that subsequent events had mooted the appeals. Specifically, on October 3, 2017, the Trustee dismissed the Fraud Claims in state court and filed a notice of dismissal in the bankruptcy court.

The Morabito Parties opposed the motion to dismiss, arguing that they had appealed from the notice of dismissal and denial of the motion for remand (BAP No. NV-17-1304), which preserved the instant appeal.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A). Subject to our discussion of mootness below, we have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether this appeal is moot.

(2) Whether the bankruptcy court abused its discretion in refusing to compel the Trustee to abandon the Fraud Claims.

(3) Whether the bankruptcy court abused its discretion in denying the Morabito Parties' request for authority to prosecute the Fraud Claims.

## STANDARDS OF REVIEW

We review de novo questions regarding mootness. Giesbrecht v. Fitzgerald (In re Giesbrecht), 429 B.R. 682, 687 (9th Cir. BAP 2010). De novo review requires that we consider a matter anew, as if no decision had been rendered previously. United States v. Silverman, 861 F.2d 571, 576 (9th Cir. 1988).

We review for abuse of discretion the bankruptcy court's decision to grant derivative standing to pursue claims of the estate. PW Racing Enters., Inc. v. N.D. Racing Comm'n

9

(In re Racing Servs., Inc.), 540 F.3d 892, 901 (8th Cir. 2008) ("the bankruptcy court's decision whether to grant a creditor derivative standing will be reviewed for an abuse of discretion"). We also review abandonment orders for an abuse of discretion. Johnston v. Webster (In re Johnston), 49 F.3d 538, 540 (9th Cir. 1995).

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. United States v. Hinkson, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

**DISCUSSION**

**A.   These appeals are not moot.**

We must first satisfy ourselves that these appeals are not moot and that we have jurisdiction over these appeals. An appeal is moot if events have occurred that prevent an appellate court from granting effective relief. Ederel Sport, Inc. v. Gotcha Int'l L.P. (In re Gotcha Int'l L.P.), 311 B.R. 250, 253-54 (9th Cir. BAP 2004). The "party moving for dismissal on mootness grounds bears a heavy burden." Motor Vehicle Cas. Co. v. Thorpe Insulation Co (In re Thorpe Insulation Co.), 677 F.3d 869, 880 (9th Cir. 2012) (quoting Jacobus v. Alaska, 338 F.3d 1095, 1103 (9th Cir. 2003)).

The Appellees first argue that the appeals are constitutionally moot because the Trustee dismissed the Complaint

10

and filed a notice of dismissal in the bankruptcy court. We think that the Morabito Parties' appeal from the notice of dismissal keeps these appeals from becoming moot. If we reverse in both these appeals and the NV-17-1304 appeal, then the Morabito Parties could pursue the Fraud Claims. Thus, it is possible to provide the Morabito Parties with some form of relief, and these appeals are not constitutionally moot. Cf. United States v. Sprint Commc'ns, Inc., 855 F.3d 985, 989 (9th Cir. 2017) (in the context of a denial of a motion to intervene, if neither party had appealed the underlying judgment that was subsequently settled and dismissed, then a court could not grant any effective relief on an appeal of a motion to intervene); Canatella v. California, 404 F.3d 1106, 1109 n.1 (9th Cir. 2005) (an appeal would not be moot if the appellant "has kept the underlying action alive by filing a notice of appeal . . . ").

The Appellees also argue that the appeals are equitably moot because it is "impractical" to revive the Fraud Claims. Under the equitable mootness doctrine, we may "dismiss appeals of bankruptcy matters when there has been a 'comprehensive change of circumstances . . . so as to render it inequitable for this court to consider the merits of the appeal.'" Rev Op Grp. v. ML Manager LLC (In re Mortgages Ltd.), 771 F.3d 1211, 1214 (9th Cir. 2014) (quoting In re Thorpe Insulation Co., 677 F.3d at 880). "An appeal is equitably moot if the case presents 'transactions that are so complex or difficult to unwind' that 'debtors, creditors, and third parties are entitled to rely on [the] final bankruptcy court order.'" Id. at 1215 (quoting In re Thorpe Insulation Co., 677 F.3d at 880).

11

We do not view the voluntary dismissal of a lawsuit as a particularly complex or hard-to-unwind transaction, and we fail to see how anyone has properly relied on that transaction. There are no considerations of fairness that prevent us from ruling on these appeals. These appeals are not moot.

**B. The bankruptcy court did not err in refusing to compel the Trustee to abandon the Fraud Claims.**

The Morabito Parties argue that the bankruptcy court should have compelled the Trustee to abandon the Fraud Claims. They contend that the Trustee unequivocally stated that he would not administer the Fraud Claims, so they should be allowed to prosecute the Complaint. We disagree.

A bankruptcy trustee is the representative of the bankruptcy estate and has exclusive standing to enforce the estate's legal claims. See § 323(a) ("The trustee in a case under this title is the representative of the estate."). He has the "authority to act for the benefit of the estate and may sell the cause of action, prosecute it in nonbankruptcy court, settle it, or abandon it to the debtor as of inconsequential value to the estate." Lopez v. Specialty Restaurants Corp. (In re Lopez), 283 B.R. 22, 32–33 (9th Cir. BAP 2002). It follows that a trustee may simply dismiss a claim if doing so would further the estate's interests. The bankruptcy trustee must determine, in his sound business judgment, what disposition is in the best interests of the estate. In re Moore, 110 B.R. 924, 927 (Bankr. C.D. Cal. 1990). The trustee's authority is discretionary. Id. at 928.

Section 554(b) provides that, "[o]n request of a party in

12

interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." However, an order compelling abandonment is "the exception, not the rule." Viet Vu v. Kendall (In re Viet Vu), 245 B.R. 644, 647 (9th Cir. BAP 2000) (citing Morgan v. K.C. Mach. & Tool Co. (In re K.C. Mach. & Tool Co.), 816 F.2d 238, 245 (6th Cir. 1987)). "The only issue before the court in an application for abandonment is whether there is a reason that the estate's interest in the property should be preserved or, instead, whether the property is so worthless or burdensome to the estate that it should be removed therefrom." In re K.C. Mach. & Tool Co., 816 F.2d at 246.

There is no dispute that the Fraud Claims are property of the debtors' estates, and the Morabito Parties do not contend that the Fraud Claims are burdensome. Therefore, we must consider whether the Fraud Claims are "of inconsequential value and benefit to the estate."

The Morabito Parties argue that once the bankruptcy court found that prosecution of the Fraud Claims "could not plausibly benefit the estate[,]" it lost its discretion to deny the Motion and had to order abandonment. While the bankruptcy court made that finding concerning the Morabito Parties' derivative standing, the court also found that **abandonment** conferred no benefit to the estate, and that instead the Fraud Claims should be dismissed: "the estates' retention of the implausible and colorless Claims is not burdensome and confers a value and benefit upon the estates by aiding the efficient and timely

13

administration of the cases."

Retention of the Fraud Claims so that the Trustee could dismiss them would confer value on the estates by aiding in the prompt resolution of the bankruptcy cases. The bankruptcy court correctly observed that litigation of the Fraud Claims would delay the closing of the estates. As long as the Fraud Claims were pending, a potential asset (however speculative) would remain unliquidated, and the claims of the Herbst Parties would remain undetermined. Adjudicating the Fraud Claims could have taken years. There would be litigation over the validity of the Fraud Claims, followed, if successful, by relitigation and possibly retrial of the underlying dispute between the Morabito Parties and the Herbst Parties, interspersed with an unknown but probably large number of appeals and collateral controversies. Eliminating this source of potentially extensive delay is sufficient "reason that the estate's interest in the property should be preserved . . . ." Id.[3]

---

[3] Allowing the Morabito Parties to pursue the Fraud Claims on behalf of the estates would not only delay the administration of the estates and this never-ending litigation, but possibly expose the estates to sanctions. This is a salient risk in light of the bankruptcy court's finding that the claims are not colorable and Mr. Morabito's admission that he is judgment-proof. Mr. Morabito "has told the Court that he does not have financial resources . . . [sufficient to] fund prosecution of the Complaint." In the previous appeal, we noted that Mr. Morabito was not paying 98 percent of his debts as they came due and that he had no way to pay his debts other than through the generosity of his former companion, who covers Mr. Morabito's "living expenses" totaling $50,000 to $75,000 per month, including $11,000 per month in rent, $2,700 per month for lease of a Bentley, legal fees, and seven credit card balances. See In re Morabito, 2016 WL 3267406, at *3, 10.

14

The Morabito Parties attack the Trustee's discretion to administer the Fraud Claims. They argue that he represented that he would not administer the Fraud Claims under any circumstance. This is false: the Trustee never stated that he would not **administer** the Fraud Claims, just that he is unable and unwilling to **prosecute** the Fraud Claims. The Trustee has, in fact, administered the Fraud Claims by dismissing them.

Moreover, we are loathe to second-guess a trustee's business judgment. The Trustee analyzed the Fraud Claims and determined that, even accepting all of the Morabito Parties' allegations, there were no colorable claims against the Herbst Parties. Based on the weakness of the Fraud Claims and the estates' lack of funds, the bankruptcy court did not err when it found that it was reasonable for the Trustee to dismiss the Fraud Claims rather than prosecute them.

The Morabito Parties also misunderstand the bankruptcy court's discretion in compelling abandonment. They argue that once the court determines that the claims are burdensome or of inconsequential value or benefit, the court loses all discretion and **must** compel abandonment. But § 554(b) clearly states that the court **may** compel abandonment, and the Morabito Parties fail to cite any authority that the court is ever divested of its discretion.[4] Even if it is correct (as the Morabito Parties

---

[4] The Morabito Parties cite Brown v. Locke (In re Brown), BAP No. NC-06-1101-MaMeRy, 2006 WL 6810938 (9th Cir. BAP Sept. 28, 2006), where we vacated and remanded the bankruptcy court's order denying the debtor's request for abandonment because the bankruptcy court did not make proper findings

(continued...)

15

argue) that "may" can mean "must," we are not convinced that "may" has anything other than its ordinary meaning in § 554(b).

We also reject the Morabito Parties' argument that refusing abandonment would increase the burden on the Trustee. The Trustee dismissed the Complaint with no fuss or difficulty.

Accordingly, the bankruptcy court did not abuse its discretion in refusing to compel abandonment of the Fraud Claims.

**C.   The bankruptcy court did not err in refusing to allow the Morabito Parties to assume and prosecute the Fraud Claims.**

The Morabito Parties argue that they should be allowed to assume the Fraud Claims and prosecute them. We again disagree.

In Gibson Group, the Sixth Circuit considered whether creditors had standing to pursue claims on behalf of the chapter 11 bankruptcy estate. It examined the tests from other jurisdictions and concluded:

> a creditor or creditors' committee may have derivative standing to initiate an avoidance action where: 1) a demand has been made upon the statutorily authorized party to take action; 2) the demand is declined; 3) a colorable claim that would benefit the estate if

---

[4](...continued) regarding the value or benefit to the estate. The Morabito Parties argue that, if a bankruptcy court has discretion to decide abandonment, we would not have remanded for further findings in Brown, because courts have discretion to deny relief even if there is no value or benefit to the estate. But a court's discretion is never unfettered and is always reviewed for abuse. Discretion does not permit a court to make any decision unsupported by the record. It must actually consider the evidence before it and articulate a decision with reasoning that is logical, plausible, and supported by inferences from the facts in the record. In Brown, we held that the court did not receive any relevant evidence and did not make any holding regarding the value of the asset. In the present case, the bankruptcy court weighed the evidence and made an informed decision.

16

successful exists, based on a cost-benefit analysis performed by the court, and 4) the inaction is an abuse of discretion ("unjustified") in light of the debtor-in-possession's duties in a Chapter 11 case. A creditor has met its burden to show standing to file an avoidance action if it has fulfilled the first three requirements and the trustee or debtor-in-possession declined to take action without stating a reason. The burden then shifts to the debtor-in-possession to establish, by a preponderance of the evidence, that its reason for not acting is justified.

66 F.3d at 1446. Bankruptcy courts within the Ninth Circuit have adopted a version of this test. See, e.g., In re Alaska Fur Gallery, Inc., No. A09-00196-DMD, 2010 WL 7765571, at *1 (Bankr. D. Alaska May 21, 2010); In re Yellowstone Mountain Club, LLC, No. 08-61570-11, 2009 WL 982207, at *6 (Bankr. D. Mont. Jan. 16, 2009).

Here, the bankruptcy court followed the Yellowstone Mountain Club version of this test:

1. A demand has been made upon the statutorily authorized party to take action;

2. The demand is declined;

3. A colorable claim that would benefit the estate if successful exists, based on a cost-benefit analysis performed by the court; and

4. The inaction is an abuse of discretion ("unjustified") in light of the debtor-in-possession's duties in a Chapter 11 case.

2009 WL 982207, at *6.

First, the Morabito Parties argue that the Gibson Group test applies only to a chapter 11 case, not chapter 7, and that the difference is crucial because a chapter 11 trustee is not charged with liquidating the estate's property. We fail to see why a different test should apply to a chapter 7 case. Although a chapter 11 debtor-in-possession (or trustee) is not charged with

17

liquidating the debtor's estate, its basic duty is the same: to maximize the economic value of the estate. Further, the Morabito Parties offer no alternative test for granting derivative status in a chapter 7 case. We conclude that the court did not err in adopting the Gibson Group/Yellowstone Mountain Club test.

Second, the Morabito Parties contend that the bankruptcy court erred in finding that the Fraud Claims were not colorable because it speculated about the success of the Fraud Claims in the state court. The bankruptcy court did not err. A court may choose to evaluate the colorability of a claim through the lens of Civil Rule 12(b)(6): a claim that could not even withstand a motion to dismiss is one example of a claim that is not colorable.[5] To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has

---

[5] Although Gibson Group and the other cases do not explicitly use the Civil Rule 12(b)(6) standard, Gibson Group determined whether the claims were colorable by looking at "the face of the complaint[.]" 66 F.3d at 1446. This standard is analogous to a Civil Rule 12(b)(6) inquiry. Many courts have explicitly adopted Civil Rule 12(b)(6) as the test for colorability. See, e.g., In re Sabine Oil & Gas Corp., 547 B.R. 503, 515 (Bankr. S.D.N.Y. 2016), aff'd, 562 B.R. 211 (S.D.N.Y. 2016) ("The inquiry [for derivative standing] as to whether a claim is 'colorable' . . . is similar to that undertaken by the court on a motion to dismiss."); Walnut Creek Mining Co. v. Cascade Inv., LLC (In re Optim Energy, LLC), 527 B.R. 169, 173 (D. Del. 2015) ("The first element of that test [for derivative standing] — whether a party has asserted a colorable claim — requires 'the court [to] undertake the same analysis as when a defendant moves to dismiss a complaint for failure to state a claim.'"); In re Dzierzawski, 518 B.R. 415, 419 (Bankr. E.D. Mich. 2014) ("other courts have held that a creditor's claims are 'colorable' in this context if they would survive a motion to dismiss under [Civil Rule] 12(b)(6)").

18

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted). To determine whether a claim is plausible, a court must use its experience and judgment to predict the possible outcome of the claim. Id. at 679. The test of "colorability" is similar. Neither is speculative. To hold otherwise would essentially require the court to hold a minitrial on the substantive issues before granting a motion to dismiss or determining the colorability of a claim.

The Morabito Parties did not provide any plausible account of the Herbst Parties' fraud, falsity, or an intent to deceive; any misrepresentations (other than their own) in the working capital calculation; or anyone's reliance on the supposed falsity. The bankruptcy court was appropriately skeptical of Mr. Morabito's statement that he only recently discovered new evidence by happenstance. The bankruptcy court did not need to accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). It also accurately noted that much of the Complaint is "simply an attempt to relitigate what either was or should have been litigated" in

19

the state court.

The bankruptcy court was also correct that the state court judgment was not based solely on the fraud concerning the working capital estimate. Rather, the court found that the judgment was based on Mr. Morabito's "lack of credibility, his failure and lack of intention to comply in any fashion with the [construction management agreement], his intentional false representations . . . and his lack of truth regarding the working capital and the value of [Berry-Hinckley Industries]." The court found it plausible that the Fraud Claims, even if true, would not affect the state court judgment.[6]

In sum, the bankruptcy court looked at a number of factors to determine whether the Fraud Claims were colorable. It drew reasonable inferences and articulated reasons that the Fraud Claims were unlikely to be successful if prosecuted. We discern no error.

Third, the Morabito Parties argue that the bankruptcy court erred in making factual findings without holding an evidentiary hearing. But the Morabito Parties did not request an evidentiary hearing before the bankruptcy court. See Team Spirit Am., LLC v. Kriegman (In re LLS Am., LLC), BAP No. EW-11-1524-DHPa, 2012 WL 2042503, at *9 (9th Cir. BAP June 5, 2012) ("By not making a request for an evidentiary hearing on the Substantive Consolidation Motion, . . . [appellant] waived its right to

---

[6] The Morabito Parties imply that the bankruptcy court held that a claim cannot be colorable unless it results in a positive monetary recovery for the estate (as opposed to just a reduction of the state court judgment). The bankruptcy court made no such statement.

20

complain about the lack of an evidentiary hearing.").

More importantly, the court was not required to hold an evidentiary hearing. As we have noted, it is appropriate to analogize the colorability standard with the plausibility standard under Civil Rule 12(b)(6). A procedural analogy is equally sound. No rule requires an evidentiary hearing on a Civil Rule 12(b)(6) motion; indeed, because such a motion tests the facial sufficiency of the complaint, it would be anomalous to permit, let alone require, additional evidence. Likewise, a court should not be required to hold an evidentiary hearing to determine the colorability of a complaint, which is also based on the face of the pleading. Here, the bankruptcy court properly determined that the Morabito Parties failed to allege any plausible instance of fraud. It did not err in denying the Motion without holding an evidentiary hearing.

Therefore, the bankruptcy court did not abuse its discretion in declining to grant the Morabito Parties authority to prosecute the Fraud Claims.[7]

**CONCLUSION**

For the foregoing reasons, we AFFIRM.

---

[7] At oral argument, the Morabito Parties raised various issues not previously argued on appeal and not supported by the record. We do not consider any of these new arguments in the first instance. See Yamada v. Nobel Biocare Holding AG, 825 F.3d 536, 543 (9th Cir. 2016) ("[g]enerally, an appellate court will not hear an issue raised for the first time on appeal"); Ezra v. Seror (In re Ezra), 537 B.R. 924, 932 (9th Cir. BAP 2015) ("Ordinarily, federal appellate courts will not consider issues not properly raised in the trial courts.").

21